UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | CR-19-164-PHX-SPL |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | August 19, 2019 |
| Khwaja Mujib Haque, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE:  THE HONORABLE STEVEN P. LOGAN, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Sentencing


Official Court Reporter:
Elva Cruz-Lauer, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 33
Phoenix, Arizona  85003
(602) 322-7261

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

<u>A P P E A R A N C E S</u>

For the Government:
            U.S. Attorney's Office
            By:  KRISTEN BROOK, ESQ.
            40 North Central Ave., Ste. 1800
            Phoenix, AZ  85004

For the Defendant Khwaja Mujib Haque:
            Constitutional Law Center for Muslims
            By: CHARLES D. SWIFT, ESQ.
            833 E. Arapaho Rd., Ste. 102
            Richardson, TX  75081

For the Defendant Khwaja Mujib Haque:
            Kimerer & Derrick PC
            By: RHONDA ELAINE NEFF, ESQ.
            1313 E. Osborn Rd., Ste. 100
            Phoenix, AZ  85014

P R O C E E D I N G S

1            THE CLERK:  Criminal case 19-164, United States of

2  America versus Khwaja Mujib Haque.

3            This is the time set for sentencing.

4            MS. BROOK:  Good afternoon, Your Honor.  Kristen Brook

5  on behalf of the United States.  Seated next to me is Special

6  Agent Ronald Jackson with the FBI.

7            THE COURT:  Good afternoon to both of you.

8            MR. SWIFT:  Good afternoon, Your Honor.  Charles Swift

9  along with the defendant, Dr. Haque, and my colleague, Rhonda

10  Neff.

11            THE COURT:  Good afternoon to all three of you as

12  well.

13            Counsel, if you will approach the lectern with your

14  client, please?

15            MR. SWIFT:  Certainly, Your Honor.

16            THE COURT:  Mr. Haque, this is the time set for your

17  sentencing.  Sir, what is your true and correct name?

18            THE DEFENDANT:  Khwaja Mujib Haque.

19            THE COURT:  And, sir, I am going to ask you to move

20  the microphone so that you could speak directly into it.

21            THE DEFENDANT:  Khwaja Mujib Haque.

22            THE COURT:  Mr. Swift, have you had a chance to review

23  the entire PSR with your client?

24

25            MR. SWIFT:  I have, Your Honor.

1          THE COURT:  Do you or your client have any objections

2     to the findings in the PSR?

3          MR. SWIFT:  We do not, Your Honor.

4          THE COURT:  Ms. Brook, any objections from the United

5     States Government?

6          MS. BROOK:  No, Your Honor.

7          THE COURT:  Let the record reflect I have had a chance

8     to review all of the documents that are part of the case file.

9          Specifically, I have with me this afternoon document

10    number 34, which is a 16-page document.  I also have document

11    number 28, which is a nine-page plea agreement.  I have the

12    defendant's sentencing memorandum, which is a seven-page

13    document.  It is document number 35.

14         And I also have document number 33, which is a --

15    which is the release status report.

16         Ms. Brook, obviously I don't get involved in plea

17    negotiations, but the court has seen cases where medical

18    professionals have been involved in criminal activity, and

19    clearly, Mr. Haque has done something warranting charging in

20    the case.

21         What went into your decision-making as it relates to

22    him walking away from this with a felony conviction, a class D

23    felony conviction, instead of potentially a deferred

24    prosecution scenario?  Was it the things -- sorry, I will just

25    let you speak on that.

1          MS. BROOK:  Sure, Your Honor.

2          It's the government's opinion with this case, after,

3     you know, a considerable amount of work on it, that this is a

4     significant felony.

5          The offense, both the nature of it and the seriousness

6     of it, is one which has the potential to cause harm to our

7     community.

8          This is a lie to the FBI.  Obviously one that was done

9     by the defendant knowingly and willfully.  He was interviewed

10    twice.  The lie persisted during both interviews, and

11    subsequently took up government resources in order to

12    investigate and to get to the bottom of what happened.

13         The government feels that the nature and the

14    circumstances related to this lie were one that deserves a

15    felony conviction, as they were significant.

16         With that said, we also did enter into a plea where we

17    stipulated to probation, based upon circumstances that I can

18    get into now or I can reserve for later.

19         THE COURT:  No, actually, I asked the question for a

20    reason, and thank you for your answer.  And typically I reject

21    plea agreements that call for stipulations to a certain

22    sentence.  I never accept them.

23         But when I looked through all of this and saw actually

24    what he is pleading to, and I certainly am not questioning the

25    government's charging in this case, he warrants this felony

1    conviction.

2         But when you see someone who has given their lives to

3    education and become a medical doctor, I am just curious, you

4    know, what went into that, and I am satisfied with your

5    response.

6         I mean, it's tragic and, you know, he was in a

7    position where he certainly is smart enough that he could have

8    told the truth, and he decided that he didn't want to tell the

9    truth, so these are the consequences for that.

10        But I didn't know if there was any additional things,

11   crimes that he wasn't charged with and this was part of the

12   plea negotiations that he would just plead to this type of

13   crime, but I appreciate that.

14        MS. BROOK:  Thank you.

15        THE COURT:  Sir, based on your crime of conviction, I

16   find the following:

17        For the crime of false statement, I find that your

18   base offense level is a 6.  And that's pursuant to Sentencing

19   Guidelines Section 2B1.1(a)(2).

20        Sir, I also find that your adjusted offense level is a

21   6.  I am granting you two levels off for acceptance of

22   responsibility, which now means your total offense level is a

23   4.

24        Sir, you don't have any contacts with law enforcement

25   that the court is aware of, so this court finds your criminal

| | |
|---|---|
| 1 | history category is a I, which means your guideline sentencing |
| 2 | range is zero to six months of confinement; do you understand |
| 3 | that? |
| 4 | THE DEFENDANT:  Yes, I do, Your Honor. |
| 5 | THE COURT:  And, sir, before I sentence you, is there |
| 6 | anything that you would like to tell me? |
| 7 | THE DEFENDANT:  Yes, I do, Your Honor. |
| 8 | THE COURT:  Go ahead, sir. |
| 9 | THE DEFENDANT:  I take the full responsibility of my |
| 10 | actions.  I willfully lied to the FBI.  I would like to |
| 11 | apologize for my actions to the FBI, to the community, and to |
| 12 | the court. |
| 13 | THE COURT:  Sir, just take a deep breath.  Ms. Neff |
| 14 | can get you some water if you need it. |
| 15 | THE DEFENDANT:  This is a low point in my life.  I |
| 16 | have lost my family, my only child, my professional status, my |
| 17 | home.  I pretty much lost everything.  I acknowledge my sin and |
| 18 | my crime.  I never been in this position before, and God |
| 19 | willing, I will never be again. |
| 20 | THE COURT:  Sir, tell me, you are 59, and I know you |
| 21 | have a very young child, and you have a -- your estranged wife |
| 22 | who filed an order of protection against you based on spousal |
| 23 | abuse, which has been unsubstantiated.  How do you plan to get |
| 24 | your life back on track, sir? |
| 25 | THE DEFENDANT:  It is going to be a struggle. |

1          THE COURT:  I'm sorry?

2          THE DEFENDANT:  It is going to be a struggle.  It is

3    not going to be easy.

4          THE COURT:  And the reason I asked the question is, I

5    have seen cases where someone has literally lost everything,

6    and, you know, if you are working at something that, you know,

7    you started a career out of high school or you don't have any

8    education, that's one thing, but you are 59, and you have

9    attained probably the most difficult discipline in the world,

10   becoming a medical doctor, and you basically have lost

11   everything.  Is there any place in the medical profession that

12   you can actually work?

13         THE DEFENDANT:  The Arizona Medical Board has put my

14   medical license under investigation, and they are waiting the

15   outcome of this trial to determine what the -- my consequences

16   will be for the felony charge.

17         THE COURT:  Have your lawyers looked into the fact

18   that -- well, have your lawyers looked into if you can still

19   practice as a doctor as a convicted felon?

20         THE DEFENDANT:  Yes, I can.  They believe I have a

21   very experienced health care attorney in Phoenix, and he works

22   on a regular basis for the past 30 years with the Arizona

23   Medical Board.

24         THE COURT:  I'm sorry?

25         THE DEFENDANT:  He works on a regular basis with the

1    Arizona Medical Board and similar cases for physicians, and he

2    informed me that I should be able to -- my license should not

3    be suspended.

4            THE COURT:  Do you have some anger management issues

5    also that you need to address?

6            THE DEFENDANT:  I have gone through the domestic

7    violence counseling.  It's a complicated situation between my

8    wife and I.  There was a lot more to it.  It's one side of the

9    story that -- the order for protection.

10           I remained silent because I wanted to protect her

11   reputation, and so I did not state my case in front of the

12   court in Minnesota.  But there's more to it than just what she

13   has stated.

14           THE COURT:  What's the status of the relationship with

15   her?

16           THE DEFENDANT:  We are going through a divorce.  She

17   has dismissed the order for protection as of July 20th, but the

18   divorce is going to go ahead forward.  She wants me to move to

19   Michigan where she lives now to be with my daughter and spend

20   some time with her.

21           THE COURT:  And obviously you understand, I mean, you

22   are a medical doctor and you are 59, if a person says they

23   don't want you in their life but they are willing to coparent,

24   there's no way to undo that.  You understand that, right?

25           THE DEFENDANT:  I understand that, sir.

1      THE COURT:  You understand you get nothing from it by

2  becoming emotional thinking that you've been wronged in some

3  way?

4      THE DEFENDANT:  Yes, sir, I do understand that.

5      THE COURT:  Is there anything else that you would like

6  to tell me, sir?

7      THE DEFENDANT:  No, thank you, sir.

8      THE COURT:  Ms. Neff or Mr. Swift?

9      MR. SWIFT:  Only one part with regards to that

10  license, Your Honor.

11      What's pending before the Arizona Medical Board, and I

12  don't expect the court to make a finding, but their principal

13  concern is whether the crime is directly related to his medical

14  practice or not.

15      In other words, they don't have access to much of the

16  file, so their part on it is, what's this lying to the FBI with

17  relationship to his medical practice?  In other words, a

18  patient or some investigation into the practice, which would

19  change the outlook on the licensing significantly.

20      So they are pending on this.  I understand from the

21  government it is their representation here in court that it had

22  no relationship to his medical practice.

23      THE COURT:  Ms. Brook is a real professional, and I am

24  sure she is not trying to put your client in a deeper hole.

25  Anything you need that she can provide, she will, because she

1    understands the importance of playing fair.

2         MS. BROOK:  So, Your Honor, if I may for a moment?  So

3    the government does not have any evidence in this case to

4    suggest or support an allegation that the lie to the FBI

5    involved the defendant's medical practice.  That's not the

6    facts with this particular case.

7         THE COURT:  Ms. Brook, thank you for that.

8         That's something positive, Mr. Haque.  And I know once

9    you leave this courtroom, you need to put all of this behind

10   you.  I know it is going to be difficult getting through life,

11   but just think about it, you are a medical doctor.  And if you

12   can get your license back or get it reinstated, you can still

13   live a productive life.

14        You can still have a family.  You can raise your

15   child.  You can be close to the child, have a meaningful

16   relationship, maybe enter into another relationship.  There's a

17   number of things that you can do up to this point.

18        And I am pretty confident, based on your demeanor, the

19   time that you have been in this courtroom, that you have

20   learned a lot from this case.

21        Mr. Swift, is there anything else from the defense?

22        MR. SWIFT:  No, Your Honor.  I think we put everything

23   in our memorandum.

24        THE COURT:  Ms. Brook?

25        MS. BROOK:  Your Honor, just briefly.  The position

1   set forth in the presentencing report is one that is echoed by

2   the government.

3          The government does request a sentence of three years

4   of probation in this particular case.  In addition, I believe

5   they have requested a $5,100 fine to be imposed.

6          It is the government's opinion that that sentence

7   fairly and sufficiently represents the factors set forth in

8   3553, to impose a sentence which is significant but not greater

9   than necessary to deter the defendant from any future criminal

10  conduct, to protect the community, and also, to fairly and

11  accurately reflect the seriousness of this crime, of which it

12  is a serious crime.

13         The government is pleased to see in the presentencing

14  report, as well as at the change of plea, that the defendant

15  has accepted full responsibility for his conduct.  And in that,

16  we believe that this sentence is an appropriate one.  Thank

17  you.

18         THE COURT:  Thank you very much, Ms. Brook.

19         This court accepts the parties' 11(c)(1)(C) stipulated

20  plea agreement, and, Mr. Haque, I also accept your plea of

21  guilty.

22         Sir, in arriving at your sentence, I have carefully

23  considered every document that's part of the case file.  I have

24  also taken into consideration the arguments that you have

25  provided to the court through your lawyer, as well as what you

1   told me this afternoon, and what the federal prosecutor told me

2   as well.

3            Pursuant to the Sentencing Reform Act of 1984, it is

4   the judgment of this court that you will be placed on probation

5   for a period of 36 months.

6            You will pay a special assessment of $100, which is

7   due immediately.

8            You will pay the fine of $5,000 due immediately, or in

9   regular monthly installments.

10           This court will order you to pay a total of $5,100 in

11   criminal monetary penalties, due immediately.  And having

12   assessed your ability to pay, the payment of the total of

13   criminal monetary penalties is due as follows:

14           The balance is due in equal monthly installments of

15   $200 over a period of 26 months, to commence 30 days after the

16   date of this judgment.

17           This court will waive the imposition of interest and

18   penalties on any unpaid balance.

19           While you are on probation, you will comply with the

20   mandatory and standard conditions of supervision as adopted by

21   this court in General Order Number 17-18.

22           Specifically, you shall not commit another federal,

23   state, or local crime during your term of supervision.  And the

24   mandatory drug testing provision is suspended.

25           Sir, within 72 hours, you need to make sure that you

1    report in person to the probation office here, and you need to

2    comply with the cooperation of collection of DNA as directed by

3    your probation officer.

4         You must notify the court of any material change in

5    your economic circumstances that might affect your ability to

6    pay restitution, fines, or special assessments.  And you must

7    provide the probation officer with access to any requested

8    financial information and authorize the release of any

9    financial information.

10        The probation office may share financial information

11   with the U.S. Attorney's Office.

12        You must submit your person, your property, your

13   house, your residence, your vehicle, papers, or office to a

14   search conducted by the probation office.

15        And if you fail to submit to the search, it may be

16   grounds for the revocation of your release.  And you must warn

17   any other occupants that the premises may be subject to

18   searches pursuant to this condition.

19        Given the financial nature of the offense and the

20   recommendation or ordering of a fine, conditions requiring that

21   you provide access to requested financial information and be

22   required to notify the court of any material change in your

23   economic circumstances that might affect your ability to pay or

24   special assessments are ordered in your case.

25        A warrantless search condition is also ordered to

1    assist in monitoring your compliance with the conditions of

2    probation and it is also ordered that you be required to submit

3    to the collection of a DNA sample, which is required by

4    statute.

5              Mr. Haque, do you understand the Court's orders.

6              THE DEFENDANT:  Yes, I do.

7              THE COURT:  Sir, I find that my sentence is sufficient

8    but not greater than necessary.  And I also find that it

9    promotes respect for the law and hopefully will deter you and

10   others from committing similar crimes.

11             Sir, there's an appellate waiver in your plea

12   agreement, which means you have given up your right to appeal,

13   as long as the sentence is consistent with what was negotiated

14   by you, Mr. Swift, and Ms. Brook, and that the sentence is not

15   illegal or unconstitutional.

16             Mr. Swift, do you agree that your client has waived

17   his right to appeal with the exception of an appeal based on

18   ineffective assistance of counsel or prosecutorial misconduct?

19             MR. SWIFT:  I do, Your Honor.

20             THE COURT:  Mr. Haque, do you also agree that you have

21   waived your right to appeal?

22             THE DEFENDANT:  Yes, I do, Your Honor.

23             THE COURT:  If you still believe you have a right to

24   appeal, you need to file the notice of appeal in writing with

25   the clerk of this court no more than 14 days from the date that

1    your judgment is filed.

2            If you cannot afford the cost of the appeal or the

3    lawyer to assist you, those costs will be paid on your behalf;

4    do you understand that?

5            THE DEFENDANT:  Yes, I do, Your Honor.

6            THE COURT:  I'm sorry?

7            THE DEFENDANT:  I do.  Excuse me.

8            THE COURT:  Sir, do you have any questions about

9    anything that's happened in your case?

10           THE DEFENDANT:  I have done six months in home

11   detention since February 12th, do I qualify for reduction on

12   that probation or no?

13           THE COURT:  No.

14           Is there any other question?

15           THE DEFENDANT:  No, thank you.

16           THE COURT:  Mr. Swift?

17           MR. SWIFT:  No, Your Honor.

18           THE COURT:  Ms. Brook?

19           MS. BROOK:  Your Honor, just one quick question.  Is

20   it standard now to notify the defendant that he is, as a

21   convicted felon, not able to possess a firearm?  Is that a

22   standard practice of notification that goes on typically at

23   this juncture, that he shouldn't be in possession of a firearm?

24           THE COURT:  Are you talking about in the orders of the

25   court?

UNITED STATES DISTRICT COURT

1          MS. BROOK:  That's correct.

2          THE COURT:  Not that we generally include.  Well, we

3    have a supervisory probation officer here.

4          Ma'am, I know who you are, but for the record, place

5    your name on the record, and please answer the federal

6    prosecutor's question.

7          U.S. PROBATION OFFICER:  Susan Narkevich.  I believe

8    there is a standard condition under the general order that you

9    are not to possess a firearm or a dangerous weapon.  There is a

10   special condition that can be added if need be, if the court

11   wants to.

12         THE COURT:  When we have a violent crime type of case,

13   it is specifically added.  But under 17-18, it is listed.  So

14   that should cover.

15         But, sir, she brings up a good point.  You need to

16   make sure that you read through General Order 17-18, which

17   spells all of that out in great detail, and you are responsible

18   for knowing and understanding that; do you understand that?

19         THE DEFENDANT:  I understand.

20         THE COURT:  Ms. Brook, is there anything else from the

21   government?

22         MS. BROOK:  No, Your Honor, thank you.

23         THE COURT:  You're welcome.  The hearing is adjourned.

24

25

| | |
|---|---|
| 1 | C E R T I F I C A T E |
| 2 | |
| 3 | I, ELVA CRUZ-LAUER, do hereby certify that I am duly |
| 4 | appointed and qualified to act as Official Court Reporter for |
| 5 | the United States District Court for the District of Arizona. |
| 6 | I FURTHER CERTIFY that the foregoing pages constitute |
| 7 | a full, true, and accurate transcript of all of that portion of |
| 8 | the proceedings contained herein, had in the above-entitled |
| 9 | cause on the date specified therein, and that said transcript |
| 10 | was prepared under my direction and control. |
| 11 | DATED at Phoenix, Arizona, this 15th day of October, |
| 12 | 2019. |
| 13 | |
| 14 | s/Elva Cruz-Lauer |
| 15 | Elva Cruz-Lauer, RMR, CRR |

UNITED STATES DISTRICT COURT